C. F. Kuhlow and J. Litwin, Appellants, v. First National Bank of Chicago et al., Appellees.

Gen. No. 43,332.

Opinion filed February 14, 1946. Released for publication February 26, 1946.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellants; MEYER ABRAMS, of Chicago, of counsel.

WINSTON, STRAWN & SHAW, of Chicago, for certain appellee; JOHN C. SLADE, BRYCE L. HAMILTON and FRANK B. GILMER, all of Chicago, of counsel.

TAYLOR, MILLER, BUSCH & BOYDEN, of Chicago, for certain other appellees; JOHN S. MILLER, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND, delivered the opinion of the court.

In case No. 42923, reported in abstract form in 324 Ill. App. 525, plaintiffs, as owners respectively of $1,000 and $7,000 of bonds of an issue of $3,500,000 on the Steuben Building, Chicago, sought to hold Halsey

Stuart & Co., Inc. liable for fraudulent misrepresentations made to them in the sale of bonds, for breaches of trust growing out of an alleged fiduciary relationship and for an accounting. Upon recommendation of the master, the chancellor found that the defendant, Halsey Stuart & Co., was not a trustee and therefore not guilty of any breach of trust, that plaintiffs were not entitled to an accounting either on the ground of trust or fraud, and that plaintiffs were barred from maintaining any action because of the intervention of the statute of limitations and of laches. The complaint was accordingly dismissed for want of equity at plaintiffs' costs, and the order was here affirmed.

In this proceeding the same plaintiffs, owners of the same bonds, sought to hold the First National Bank of Chicago, which was not a party to the foregoing proceeding, liable for breach of trust and for an accounting, under a mortgage trust deed and disbursement agreement growing out of the same bond issue involving the construction of the Steuben Building in Chicago. The facts with respect to the organization of the Steuben Club, its contract with the Chicago Title and Trust Company for the purchase of the land upon which the Club was to be erected, the underwriting or purchase of the mortgage bond issue by Halsey Stuart & Co., and the various undertakings of the Building Corporation, the Club and of Halsey Stuart, are sufficiently set forth in our former opinion and need not be repeated here. For the purposes of this proceeding it is sufficient to state that on April 18, 1928, as part of the Steuben Club enterprise, a mortgage trust deed was executed pursuant to the provisions of the contract between the Steuben Club and Halsey Stuart wherein the Union Trust Company, which by later consolidation and merger was succeeded by the First National Bank, the defendant herein, became (1) Trustee of a mortgage trust deed executed

by 188 Randolph Building Corporation to secure $3,500,000 of its series A and $600,000 of its series B first mortgage bonds, dated March 1, 1928, and (2) Disbursing agent under an agreement with the Building Corporation and others, of monies, junior securities and accounts receivable deposited with it for distribution in accordance with the directions and provisions of the disbursement agreement. The money so deposited included $2,490,113.02, which represented a part of the purchase price paid by Halsey Stuart & Co., Inc. for the entire $4,100,000 of series A and series B bonds. The disbursement agreement recited that this sum of $2,490,113.02 had been deposited with the disbursing agent by Halsey Stuart upon the written direction of the Building Corporation and the Steuben Club; that the Building Corporation "had appointed the Disbursing Agent its agent to receive payment of said sum, agreeing that the payment thereof to the Disbursing Agent shall be for all purposes payment thereof to the Company,"—that is, the Building Corporation; and that the said sum was to be held and disbursed in accordance with the provisions of the disbursement agreement. In this proceeding plaintiffs seek an accounting and other equitable relief against the First National Bank on the principal ground that $539,674.28 of the funds were improperly disbursed by the Union Trust Company for nonconstruction purposes; and they also claim that an additional item of $30,150 disbursed for construction purposes was improper. More specifically, plaintiffs' claim, as stated in their brief, is as follows: "It paid out $539,674.28 for non-construction purposes, resulting in the non-completion of the building on June 1, 1929, and in foreclosures on the lien claims. These items were:

Monthly deposits.....................$369,000.00
Bondholders' Income Tax..............    5,898.82

| | |
|---|---|
| 1927 Real Estate Taxes | 35,539.47 |
| Trustees' fees and fees of Disbursing Agent | 16,235.99 |
| Insurance | 15,000.00 |
| Interest in payment of coupon due March 1, 1930 | 98,000.00 |
| Settlement of lien suit | 30,150.00 |

totalling $569,824.28.''

The master in this proceeding, after a full hearing, filed an exhaustive report setting forth the facts relating to the various agreements entered into between the Club, the Building Corporation, Halsey Stuart and the Bank, and concluded that the Bank, both as trustee and as disbursing agent, faithfully discharged all its duties and responsibilities, that plaintiffs had failed to prove the allegations of their original and amended complaints, and that the equities of the cause were with defendants, and he recommended that the complaint be dismissed at plaintiffs' costs. The chancellor adopted the master's recommendations and entered the decree from which plaintiffs appeal.

The claims advanced by plaintiffs, as hereinbefore set forth in itemized form, do not rest on the contention that these disbursements were not authorized by the disbursement agreement; in fact all of them were directed to be made by the provisions of that instrument. On hearing before the master, plaintiffs stipulated that they do not in this proceeding contend that any of said disbursements were not made in compliance with the disbursement agreement except those for 1927 real estate taxes aggregating $35,539.47, and for settlement of a lien suit in the amount of $30,150, and in that stipulation they expressly limited plaintiffs' ground of complaint with respect to disbursements to: (1) the use of the proceeds of the sale of the Building Corporation's first mortgage bonds for other than

"construction purposes," and (2) the grounds stated in subparagraphs (a) to (e) of paragraph 14 of the complaint, which may be summarized as an attack upon the legality of the entire bond issue because it was allegedly *ultra vires* the Club. Plaintiffs further stipulated that they do not in this action question the amount or the reasonableness of the trustee's fees and fees of the disbursing agent.

As to the two items excepted in the above stipulation, the master reported as follows: "It appears from the evidence that the Union Trust Company paid out on account the sum of $35,539.47 for general taxes for the year 1927, and $30,150.00 on account of a mechanic's lien suit.

"The uncontroverted evidence is that the sum of $35,539.47 was paid by the Union Trust Company on April 25th, 1928, from the Real Estate Tax Reserve account which under the agreement was created for the specific purpose of 'payment of taxes and special assessments upon the property payable during the construction period.' The sum of $30,150.00 was paid for the purpose of discharging a part of the legitimate cost of construction of the building and was authorized under the provisions of the Disbursement Agreement."

With the exception of the two foregoing payments, plaintiffs' claim against the Union Trust Company as disbursing agent is founded principally on the contention that the disbursing agent's powers and duties were not those specified in the disbursement agreement, but were governed by virtue of other agreements which antedated and preceded the execution of the mortgage trust deed and the disbursement agreement. Specifically, the agreement relied upon by plaintiffs is the contract between the Steuben Club and Halsey Stuart dated November 23, 1927. That document was admitted in evidence subject to the objection of the

defendants, and later in his report the master found that neither the Union Trust Company nor any of its officials had any knowledge of that agreement or of any of its contents, and accordingly ruled that the objection of the defendants was proper and that the contract of November 23, 1927 cannot be considered as legal evidence in the case; and he concluded as a matter of law that "Even if the Union Trust Company were aware of the agreement of November 23rd, 1927, this could have no effect on the duties and responsibilities imposed upon the Union Trust Company under the two agreements to which it was a party *unless* said agreement of November 23rd, 1927, were in express terms made a part of the mortgage trust deed, or the disbursement agreement, or either or both.

"The 'Charter of powers' of the Union Trust Company was contained in the mortgage trust deed and the Disbursement Agreement. The Union Trust Company had no right to deviate from the duties and responsibilities fixed in these two documents. Had the Union Trust Company permitted the contract of November 23rd, 1927, in any manner to influence its course of conduct, it would definitely have been guilty of a breach of trust for the reason that said contract of November 23rd, 1927, was not referred to or in any manner made a part of either the mortgage trust deed or the Disbursement Agreement.

"The plaintiffs' contention is that the transaction between the Steuben Club and Halsey, Stuart & Co. Inc. under the agreement of November 23rd, 1927, was an illegal transaction in that the Club had no power under its charter to enter directly or indirectly into any contract for the erection of the building in question and that the Steuben Club and Halsey, Stuart & Co. Inc. had entered into an unlawful conspiracy to swindle the public who might purchase the bonds of the new corporation which was to be created.

"No evidence was offered that would in any manner implicate the Union Trust Company with the contract of November 23rd, 1927, or with any other transactions between the Steuben Club and Halsey, Stuart & Co. Inc."

But plaintiffs now argue that the Bank, in its dual capacity as trustee and disbursing agent, was chargeable with knowledge of the contents of the underwriting agreement and was charged with the duty of protecting the bondholders, and that the master erred when he excluded the underwriting agreement from the evidence and concluded that the Bank had no knowledge of its contents. They say that the agreement of November 23, 1927 between the Steuben Club and Halsey Stuart was described in the disbursement agreement between the Club and the Bank, and that the Bank was therefore chargeable with knowledge of the contents of the agreement, and in support of their position they advance the proposition and cite cases tending to hold that where one instrument is described in another and the means for ascertaining its contents are available, the parties to the agreement are chargeable with knowledge of the contents of the described agreement.

Until the final hearing of the case before the chancellor, plaintiffs had rested their claim that the disbursements complained of were improperly made, on the theory that the powers and duties of the disbursing agent were governed and limited by certain provisions of the underwriting agreement of November 23, 1927 between the Club and Halsey Stuart, and they argued in effect that this preliminary agreement to which the Union Trust Company was not a party, precluded the use of any part of the purchase price which Halsey Stuart paid for the bonds for any purpose except costs of construction. On that theory plaintiffs took the position that the $2,490,113.02 which Halsey Stuart paid over to the Union Trust Company on April 18, 1928 for disbursement "in accordance

with the provisions thereof'' could not be used for all the purposes therein specifically directed. The master rejected this argument, and we think properly so, by finding that the Union Trust Company had faithfully discharged all its duties and responsibilities under both the trust deed and the disbursement agreement, and he called attention to the plaintiffs' concession that all the payments under the respective documents to which the Union Trust Company was a party, were authorized and sanctioned under the provisions of those documents, with the exception of two payments specifically objected to, namely, the payment of certain taxes and of a mechanic's lien claim; and he reported that ''The plaintiffs' main attack, however, is based on certain rights and obligations which the plaintiffs claim were established under and by virtue of other written agreements which antedated and preceded the execution of the mortgage trust deed, and the Disbursement Agreement. Specifically, the agreement relied upon by the plaintiffs is the contract between the Steuben Club and Halsey, Stuart & Co., Inc., dated November 23rd, 1927.

''The important question of law to be determined in this proceeding is whether the statements, stipulations and conditions of this contract of November 23rd, 1927 (which was executed approximately six months prior to the execution of the mortgage trust deed and the Disbursement Agreement), in any manner controlled, limited or fixed the obligation of the Union Trust Company under the two documents to which it was a party.

''As a matter of fact, counsel for the plaintiffs here conceded in an argument before the Master that the plaintiffs' case would stand or fall on the admissibility of said contract of November 23rd, 1927, in evidence.''

Since the controversy here presented was determined largely upon the issue that the contract of November 23, 1927 was not admissible and that the Union Trust Company had no knowledge of and was there-

fore not bound by that agreement, it becomes important to inquire whether the theory to which plaintiffs were committed while the case was being heard and argued before the master, is valid and tenable. The disbursement agreement represented what the parties in interest wanted done with the deposited funds on April 18, 1928, when the agreement was made. Of course, the Union Trust Company was not concerned with any undertaking for the expenditure of the funds under an agreement between the Steuben Club and Halsey Stuart made five months earlier. This would be true even if the Union Trust Company had knowledge of that earlier agreement. Moreover, it appears from the evidence that the Union Trust Company did not even know or have notice of the provisions of the contract of November 23, 1927, and the master so found. It is urged by plaintiffs, however, and it was so argued before the master, that the Union Trust Company was chargeable with knowledge of the contents of the contract with Halsey Stuart & Co. even though it had no actual knowledge thereof, and the argument is based on the claim that the agreement in question ''was described in the Disbursement Agreement.'' However, a reference to the recital of the disbursement agreement will show that the ''underwriting contract'' therein referred to was an agreement between Halsey Stuart and the Building Corporation, which was designated as ''the Company.'' The underwriting contract is not actually described and is referred to only to the extent of reciting that Halsey Stuart had thereby agreed to purchase and the Building Corporation had agreed to sell its bonds dated March 1, 1928, that the purchase price payable by the underwriters for said bonds, less certain deductions, should be deposited with the disbursing agent ''for the purpose of securing the application and disbursement thereof in accordance with the provisions of this agreement''; that the portion of said purchase price

to be so deposited was the sum of $2,490,113.02; that the Building Corporation and the Club had directed the underwriters in writing to pay said sum to the disbursing agent; and that the Building Corporation had appointed the disbursing agent its agent to receive payment thereof. We think these recitals of the disbursement agreement indicate that the master was correct in stating that the agreement of November 23, 1927 between Halsey Stuart and the Steuben Club "was not referred to or in any manner made a part of either the mortgage trust deed or the Disbursement Agreement." Inasmuch as the Union Trust Company was a stranger to any agreement between Halsey Stuart and either the Building Corporation or the Steuben Club, notice to it was necessarily limited to what was stated in the disbursement agreement. Its duties were clearly outlined in that agreement, and it was not obliged to inquire into or concern itself with any earlier undertakings entered into between Halsey Stuart and others. We are therefore satisfied that the master correctly excluded the agreement of November 23, 1927 from consideration in determining whether plaintiffs had any valid ground of complaint against the Bank.

Under their stipulation plaintiffs limited their claim of noncompliance with the disbursement agreement to two items, one being payment on April 25, 1928 of $35,539.47 on account of 1927 real estate taxes, and the other item being $30,150 paid February 20, 1930 in settlement of a mechanic's lien suit. These disbursements were not only authorized but were required to be made under the provisions of articles III and VII of the disbursement agreement. The master held from the uncontroverted evidence that "the sum of $35,539.47 was paid by the Union Trust Company on April 25th, 1928, from the Real Estate Tax Reserve account which under the agreement was created for the specific purpose of 'payment of taxes and special as-

sessments upon the property payable during the construction period.' The sum of $30,150.00 was paid for the purpose of discharging a part of the legitimate cost of construction of the building and was authorized under the provisions of the Disbursement Agreement,'' and he stated: ''Despite any technical objections that the plaintiffs might make as to either of the aforesaid payments, or as to both, the broad fact remains that neither of these sums, or any part thereof, was dishonestly retained by the Union Trust Company, but [both] were paid out for legitimate purposes under the authority specifically granted the Union Trust Company in and by the Disbursement Agreement. The Union Trust Company derived no financial advantage through the payment of either or both of these items and in its broadest sense it can be stated that these payments were made for the protection and benefit of such persons who might in due course become owners and holders of bonds.'' We think these findings are amply justified by the record here presented.

In addition to the foregoing charges, plaintiffs alleged fraud and misconduct against the Union Trust Company in its capacity as trustee under the trust deed of April 18, 1928, given to secure its issue of $4,100,000 of series A and B bonds. Among other allegations it is charged that the trustee actively participated in marketing ''an *illegal* and *fraudulent* bond issue of $4,100,000.'' There is no evidence in the record that Union Trust Company or its successors had anything to do with the marketing of the bonds, which was done wholly by Halsey Stuart, the purchaser of the entire issue from the Building Corporation. The claim that the bond issue itself was illegal and fraudulent is predicated on the contention that the acquisition of the premises, the organization of the Building Corporation, the erection of the building, and the sale and guarantee of payment of the $4,100,000 bond issue

were all *ultra vires* the Club. We think this theory is utterly untenable and fallacious. The trust deed itself discloses that at the date of its execution, title to the land in question belonged to the Building Corporation; that the bonds secured by the trust deed were to be issued by the Building Corporation; that the then proposed building was to be constructed by the Building Corporation; and that the effective conveyance of the land and building for the purposes of the mortgage was made by the Building Corporation. The Club merely quitclaimed whatever interest it might have had. The trust deed therefore obviously created a valid and effective mortgage by the Building Corporation on both land and building; and this would be true whether or not the Club's guarantee, which was purely collateral to the mortgage, could have been enforced against the Club if it had remained in existence and financially responsible, and had elected to claim *ultra vires* as a defense. Charges such as that the trustee improperly certified the bonds, that it was the duty of the trustee under the trust deed to compel the Building Corporation to deposit with the disbursing agent the entire proceeds derived from the sale of its bonds, that the trustee knew that the Building Corporation did not have title to the mortgaged premises at the time the mortgage was executed, that the bond issue exceeded 80 per cent of the value of the property covered thereby and therefore could not be validly sold as first mortgage bonds, and others, are unfounded in fact and in law, as shown in the master's report, and are too numerous to discuss within the confines of this opinion.

The chancellor in overruling exceptions to the master's report and before entering the decree from which this appeal is taken, indicated, among other reasons, that plaintiffs could not have prevailed because the bondholders were not injured by the making of the disbursements complained of, and indeed it is difficult

to comprehend that the payment to series A bondhold-
ers of interest which they would not otherwise have re-
ceived could in any view constitute an injury to the
recipients for which a court of equity should award an
accounting or grant any other form of equitable relief.

After careful consideration of the various questions
presented and argued, we are convinced that the de-
cree of the circuit court was proper, and it is therefore
affirmed.

*Decree affirmed.*

SCANLAN and SULLIVAN, JJ., concur.